UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                        Case No. 16-cr-20460

v.

                                        HON. MARK A. GOLDSMITH

EDWIN MILLS, et al.,

        Defendants.

_____/

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANT PATRICK JOHNSON'S**
**DISCOVERY MOTIONS (Dkts. 350, 352, 353)**

      This matter is before the Court on Defendant Patrick Johnson's motions for pretrial

disclosure of co-defendants' statements that the Government intends to offer into evidence during

trial (Dkt. 350),[1] pretrial disclosure of confidential informants' identities and any agreements

between the Government and its witnesses (Dkt. 352),[2] and retention and pretrial disclosure of

rough notes of government agents and law enforcement officers (Dkt. 353).[3] The Government has

---

[1] Defendants Lomnil Jackson and Donell Thompson have each filed a notice of joinder concurring in the relief sought in this motion. See Notices of Joinder (Dkt. 481, Jackson; Dkt. 483, Thompson).

[2] Defendants Edwin Mills, Carlo Wilson, Jackson, and Thompson have each filed a notice of joinder concurring in the relief sought in this motion. See Notices of Joinder (Dkt. 430, Mills; Dkt. 435, Wilson; Dkt. 481, Jackson; Dkt. 483, Thompson).

[3] Defendants Mills, Wilson, Jackson, and Thompson have each filed a notice of joinder concurring in the relief sought in this motion. See Notices of Joinder (Dkt. 431, Mills; Dkt. 436, Wilson; Dkt. 481, Jackson; Dkt. 483, Thompson).

filed a response to each motion (Dkts. 509, 512, and 511, respectively).[4] For the reasons discussed below, the Court grants in part and denies in part Johnson's discovery motions.

## I. BACKGROUND

A federal grand jury returned a second superseding indictment on February 28, 2018, charging eleven defendants with various crimes, including alleged violations of the Racketeering Influenced and Corrupt Organizations Act (the "RICO" Act), 18 U.S.C. § 1961 et seq. See generally 2d Superseding Indictment (Dkt. 292). In particular, Johnson has been charged with one count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d). See 2d Superseding Indictment at 2.

The second superseding indictment claims that defendants were members and associates of a criminal enterprise—here, the "6 Mile Chedda Grove" street gang in Detroit—one of the purposes of which was to "preserv[e] and protect[] the power, territory, reputation, and profits of the enterprise through murder, robberies, intimidation, violence, and threats of violence." Id. at 2, 6. The indictment further alleges that the enterprise's profits derived primarily from the sale and distribution of controlled substances, including crack cocaine, heroin, and morphine. Id. at 5. The alleged sale and distribution of controlled substances was not limited to just Michigan; gang members and associates purportedly sold and distributed controlled substances in Ohio, Kentucky, Tennessee, Alabama, and West Virginia. Id.

## II. STANDARD OF DECISION

In contrast to the broad scope of discovery in civil cases, the discovery available to a criminal defendant is relatively constricted. For most criminal prosecutions, there are three

---

[4] Because oral argument will not aid the decisional process, these motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

governing rules that "'exhaust the universe of discovery to which [a] defendant is entitled.'" United States v. Watson, 787 F. Supp. 2d 667, 672 (E.D. Mich. 2011) (quoting United States v. Presser, 844 F.2d 1275, 1285 n.12 (6th Cir. 1988)). The first is the Brady doctrine, derived from Brady v. Maryland, 373 U.S. 83 (1962), which requires the Government to disclose evidence that is favorable to the accused and material to guilt or sentencing, as well as evidence that could be used to impeach the credibility of a government witness. Watson, 787 F. Supp. 2d at 672 & n.5. The second is Federal Rule of Criminal Procedure 16(a), which "requires the government to disclose, upon a defendant's request, any oral or written statements of the defendant, the defendant's prior record, any documents or tangible evidence within the government's possession, custody or control [that are material to the defense or to be used in the Government's case-in-chief], reports of examinations or tests, and a summary of any expert witness testimony." Watson, 787 F. Supp. 2d at 672 (citation and quotation marks omitted); Presser, 844 F.2d at 1285 ("[D]iscovery afforded by Rule 16 is limited to the evidence referred to in its express provisions."). The third is the Jencks Act, 18 U.S.C. § 3500, which "'generally requires the government, on motion of a defendant, to produce statements in its possession of witnesses who testify at trial.'" Watson, 787 F. Supp. 2d at 672 (quoting United States v. Short, 671 F.2d 178, 185 (6th Cir. 1982)); 18 U.S.C. § 3500(b);[5] see also United States v. Davis, 306 F.3d 398, 421 (6th Cir. 2002) ("When Brady material sought by a defendant is covered by the Jencks Act . . . the terms of that Act govern the timing of the government's disclosure."); Presser, 844 F.2d at 1282-1285 (holding that neither

---

[5] Section 3500(b) provides, in full: "After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use." (Emphasis added).

Brady, Giglio v. United States, 405 U.S. 150 (1972), nor Rule 16 gives a defendant the right to broad pretrial discovery of impeachment evidence, the disclosure of which is instead controlled by the Jencks Act).

## III. DISCUSSION

Johnson has filed three motions that fall within one or more of the three categories above. The Court considers each motion in turn.

### A. Johnson's Motion for Pretrial Disclosure of Co-Defendants' Statements the Government Intends to Offer into Evidence During Trial (Dkt. 350)

Johnson requests an order compelling the Government to produce before trial any statements of his co-defendants that it intends to offer into evidence during trial.[6]  Johnson claims that this pretrial disclosure is necessary to avoid any potential violation of his Sixth Amendment confrontation rights, as contemplated by Bruton v. United States, 391 U.S. 123 (1968), and Rule 14(b).[7]  See generally Def. Mot. (Dkt. 350).  In its response, the Government contends that neither Bruton nor Rule 14(b) mandate pretrial disclosure of co-defendants' statements to a defendant. See generally Gov't Resp. (Dkt. 509).  The Court agrees with the Government that disclosure of these statements is not mandatory.

---

[6] Five of the eleven defendants charged in the second superseding indictment have since pleaded guilty.  The six remaining defendants have been separated into two groups with separate trials. See 8/7/2018 Order (Dkt. 425).  Group One, composed of four defendants who are not subject to the death penalty upon conviction, has a trial date set for April 23, 2019.  See Group One Scheduling Order (Dkt. 464); 9/21/2018 Status Conference (finalizing Group One trial date).  Group Two, composed of two defendants who are death-penalty eligible, has a trial set for April 21, 2020.  See Group Two Scheduling Order (Dkt. 475).  Johnson belongs to Group One, along with Donell Thompson, Lomnil Jackson, and Robert Baytops.

[7] Rule 14(b) provides that, "[b]efore ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence."  Fed. R. Crim. P. 14(b).  Because Johnson's motion is not one for severance, this rule is not applicable to his discovery request.

In Bruton, the Supreme Court held that a defendant's rights under the Confrontation Clause of the Sixth Amendment are violated when the confession of a non-testifying co-defendant that links the defendant to the charged crime is introduced at a joint trial. 391 U.S. at 135-137; see also Richardson v. Marsh, 481 U.S. 200 (1987). Bruton and its progeny, however, "'do not mandate pretrial disclosure of such statements to the defense.'" United States v. Murgio, 209 F. Supp. 3d 698, 725 (S.D.N.Y. 2016) (quoting United States v. Stein, 424 F. Supp. 2d 720, 727 (S.D.N.Y. 2006)); accord Richardson, 481 U.S. at 209 (directing the government to produce a co-conspirator's statements with the defense during the pretrial stage would be "time consuming," "far from foolproof," and of "doubtful" feasibility).

Nevertheless, although a defendant has no absolute right to the statements his co-defendants made to authorities, see, e.g. United States v. Smith, 252 F. App'x 20, 25 (6th Cir. 2007) (finding that the defendant was not entitled to the statement of his co-defendants), vacated on other grounds by Townsend v. United States, 553 U.S. 1050 (2008), the district court has the discretion to order the Government to produce a co-defendant's statement before trial to the extent the co-defendant is not a prospective government witness, see, e.g., United States v. Rivera, 6 F.3d 431, 439 & n.7 (7th Cir. 1993) (concluding that "the question of whether the government must produce a codefendant's statement wisely is left to the sound discretion of the district judge," but recognizing that "the district court's discretion is limited by the Jencks Act"); accord United States v. Williams, 792 F. Supp. 1120, 1126 (S.D. Ind. 1992) ("[C]oconspirator statements may be discovered prior to trial only if the court orders them to be disclosed in the exercise of its discretion."). Given the circumstances of this case and the importance these statements will inevitably have in the preparation of Defendants' defenses, the Court grants the motion. Unless the co-defendant is a prospective government witness as contemplated under the Jencks Act, the

Government shall produce any statements of co-defendants that it intends to offer into evidence sixty days before trial.

### B. Johnson's Motion for Pretrial Disclosure of Informants' Identities and Agreements Between the Government and Its Witnesses (Dkt. 352)

Johnson argues that disclosure of a confidential informant's identity is permissible under Giglio and Roviaro v. United States, 353 U.S. 53 (1957), "because disclosure would enable the defense to speak with the informants, which would in turn lead to exculpatory evidence," and because "[d]isclosure would substantially assist the defense and is essential to a fair trial." Def. Br. at 2 (Dkt. 352). Johnson further argues that under Brady and Bagley v. United States, 473 U.S. 667 (1985), the Government must disclose evidence of a government witness's bias, including any deal or agreement reached between the Government and that witness. See generally Def. Br. at 1; see also id. at 1-2 ("This information regarding possible bias is especially crucial in the instant case, because Defendant Patrick Johnson expects that the Government has provided inducements by deals, immunity, reduced sentence, payment of money, etc. to its witnesses."); id. at 3 ("[I]t is likely that many Government witnesses will receive some form of consideration for their testimony against Defendant Patrick Johnson."). Johnson requests that the identity of informants and the contents of any agreements be disclosed sixty days before trial. Id. at 3.

In its response, the Government acknowledges its obligations under both Brady and Giglio and claims that it will continue to comply with them in a timely manner. See Gov't Resp. at 1, 4 (Dkt. 512). The Government maintains, however, that it cannot be compelled to produce informants' names under Rule 16, and that Johnson has failed to establish how discovery of an informant's identity would assist his defense to overcome the informer's privilege. See id. at 5-8. As for the disclosure of any agreements it may have with witnesses, the Government notes that there is no "hard and fast rule" regarding the timing of this Giglio discovery. Gov't Resp. at 10.

Thus, the Government has agreed to produce this evidence at least thirty days before trial. <u>See</u> <u>id.</u> at 2, 11.

Regarding the pretrial disclosure of a confidential informant's identity, the Court agrees with the Government that a criminal defendant is not entitled as a matter of right to a list of the government's witnesses in advance of trial. <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977) ("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably."); <u>United States v. Davis</u>, 306 F.3d 398, 420 (6th Cir. 2002) ("[O]rdinarily, a defendant is not entitled to a list of the names . . . of the government's witnesses."); <u>United States v. McCullah</u>, 745 F.2d 350, 353 (6th Cir. 1984) ("This court . . . has firmly established that defense counsel is not entitled to know in advance of trial who will testify for the government."); <u>United States v. Kendricks</u>, 623 F.2d 1165, 1168 (6th Cir. 1980) (per curiam) ("It is well recognized that defendants cannot obtain lists of prosecution witnesses as a matter of right."); <u>United States v. Conder</u>, 423 F.2d 904, 910 (6th Cir. 1970) ("[T]he names and criminal records of government witnesses are not discoverable under Rule 16(b)."). Nevertheless, a district court has the inherent authority to order pretrial disclosure of the government's witnesses. <u>See</u> <u>Kendricks</u>, 623 F.2d at 1168 (recognizing that the district court has discretion to order the prosecution to produce a list of prosecution witnesses); <u>Watson</u>, 787 F. Supp. 2d at 674 (collecting cases and ordering disclosure ten days before trial).

Notwithstanding this authority, the Government may (as it has here) invoke the so-called "informer's privilege" to withhold certain information from disclosure, including an informant's identity. <u>Roviaro</u>, 353 U.S. at 59-60; <u>see also</u> <u>United States v. Sharp</u>, 778 F.2d 1182, 1185 n.1 (6th Cir. 1985) (per curiam) (noting that this is the government's privilege despite being referred to as an informer's privilege). Because this privilege is limited by the "fundamental requirements of

fairness," Roviaro, 353 U.S. at 60, "information about a confidential informant (or the informant's testimony itself) may be admitted if the revealing evidence 'is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause,'" United States v. Sierra-Villegas, 774 F.3d 1093, 1098 (6th Cir. 2014) (quoting Roviaro, 353 U.S. at 60-61).  Determining whether the Government must disclose the identity of an informant requires a careful balancing of "the public interest in protecting the flow of information against the individual's right to prepare his defense." Rovario, 353 U.S. at 62.  This decision will ultimately be left to the Court's discretion and depend on "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id.

Importantly, disclosure is not warranted when the possible relevancy of an informant's identity is based on "mere conjecture or supposition."  United States v. Doxey, 833 F.3d 692, 707 (6th Cir. 2016).  Instead, the defendant bears the burden of providing some evidence that disclosure of the informant's identity would substantially assist his defense before disclosure will be warranted.  Id. (affirming district court's refusal to disclose informant's identity because the defendant "merely argued that disclosure of the [confidential informant's] identity would allow him to assess the strength of the government's case"); see also United States v. Ray, 803 F.3d 244, 274 (6th Cir. 2015) (affirming district court's refusal to compel disclosure of confidential informant's identity because the defendant "merely argued that the [confidential informant] was the person that formed the facts for the issuance of the search warrant, and so in order to present any viable defense, the requested information was necessary"); United States v. Moore, 954 F.2d 379, 381 (6th Cir. 1992) (affirming district court's refusal to compel disclosure of confidential informant's identity because the defendant "advanced no more than a simple statement that [the

informant's] testimony might assist in his defense"); Sharp, 778 F.2d at 1186-1187 (holding that district court abused its discretion by ordering disclosure of informant's identity based solely on defense counsel's unsworn representations that disclosure would be relevant and helpful to his defense).

Johnson has failed to demonstrate how disclosure of any informant's identity would substantially or materially assist his defense, or that disclosure was essential to a fair trial to overcome the informer's privilege. Moore, 954 F.2d at 381; United States v. Hammons, 411 F. App'x 837, 843 (6th Cir. 2011); United States v. Sales, 247 F. App'x 730, 734-735 (6th Cir. 2007). Instead, he merely suggests that "disclosure would enable the defense to speak with the informants, which would in turn lead to exculpatory evidence," and that "[d]isclosure would substantially assist the defense and is essential to a fair trial." Def. Br. at 2. Having opted not to file a reply brief, Johnson offers no further explanation in support of his position. As in Doxey, Ray, Moore, Sharp, Hammons, and Sales, among others, this sort of conclusory argument is insufficient to warrant disclosure of a confidential informant's identity. Nor are these speculative assertions sufficient to warrant an in camera hearing. See Sierra-Villegas, 774 F. 3d at 1099 ("[A]n in camera hearing is not required when the defendant fails to identify how the informant's testimony could be relevant or helpful." (citing Sharp, 778 F.2d at 1187)). Therefore, this portion of Johnson's motion is denied.[8]

Regarding the pretrial disclosure of agreements reached between the Government and its witnesses, "[i]t is well established that an express agreement between the prosecution and a witness

---

[8] The Government has indicated in its response that it has "agreed to accommodate defense counsel by providing disclosure at least 30 days prior to trial, which would be in line with the government's Jencks disclosures, unless there are specific and concrete safety concerns for a particular informant." Gov't Resp. at 2. This is a matter that will be addressed at the final pretrial conference with respect to specific witnesses.

is possible impeachment material that must be turned over under <u>Brady</u>." <u>Bell v. Bell</u>, 512 F.3d 223, 233 (6th Cir. 2008) (en banc) (citing <u>Giglio</u>, 405 U.S. at 154-155). Less formal agreements, including unwritten and tacit agreements, are also subject to disclosure under <u>Brady</u>. <u>Bell</u>, 512 F.3d at 233 (citing <u>Wisehart v. Davis</u>, 408 F.3d 321, 323-324 (7th Cir. 2005)); <u>see also</u> <u>id.</u> at 234 ("'The government is free to reward witnesses for their cooperation with favorable treatment in pending criminal cases without disclosing to the defendant its intention to do so, <u>provided</u> that it does not promise anything to the witnesses prior to their testimony.'" (quoting <u>Shabazz v. Artuz</u>, 336 F.3d 154, 165 (2d Cir. 2003))). The Government does not refute this; in fact, it fully recognizes its obligations under <u>Brady</u> and <u>Giglio</u>, <u>see</u> Gov't Resp. at 9, and it has agreed to disclose this material thirty days before trial, <u>id.</u> at 10.

Given the Government's awareness of its obligations under Rule 16, <u>Brady</u>, and <u>Giglio</u>, as well as its indication that it will disclose the requested information thirty days before trial, an order from this Court directing such pretrial disclosure is unnecessary. <u>See</u> <u>Watson</u>, 787 F. Supp. 2d at 673 ("Courts have concluded that the government's assurance that it is aware of its obligations under Rule 16 . . . is sufficient, and does not compel pre-trial discovery."); <u>see also</u> <u>United States v. Hogg</u>, No. 13-CR-20809, 2014 WL 1328170, at *3 (E.D. Mich. Apr. 2, 2014) (denying the defendant's motion for pretrial disclosure of impeachment evidence where the government was aware of its obligations and agreed to turn over <u>Giglio</u> material fourteen days before trial). And although Johnson claims that he needs "adequate time to take the necessary steps to effectively prepare for the cross-examination of cooperating witnesses and confidential informants," Def. Br. at 3, Johnson offers no particularized reason for requiring an earlier disclosure date. <u>Watson</u>, 787 F. Supp. 2d at 674 (finding that, where the government agreed to turn over materials ten days before trial, an earlier disclosure date was not warranted because the defendant spoke only of a

"generalized need to prepare for cross examination"). Therefore, this portion of Johnson's motion is also denied.

### C. Johnson's Motion for the Retention and Pretrial Disclosure of Rough Notes of Government Agents and Law Enforcement Officers (Dkt. 353)

Johnson moves the Court for an order directing "all law enforcement officials who have had any connection with the case to retain all notes they made during their investigation." Def. Br. at 1; see also id. at 3 (suggesting that these "notes may contain critical information not included in the formal reports of law enforcement"). The purpose of this motion, says Johnson, is to preserve these "rough notes for production before trial," which, in turn, will assist in cross-examination of witnesses in accordance with the Jencks Act, determine whether the Government has complied with its Brady obligations, and avoid a factual determination of good faith in the event the notes were later destroyed. Id. at 1-2. Johnson further argues that these notes should be disclosed "in a timely manner before trial." Id. at 3.

In its response, the Government states that it already "intends to retain the rough notes that federal agents have made in connection with the investigation of this case," as well as any "rough notes from state investigators" that it obtains. Gov't Resp. at 1 (Dkt. 511). The Government asserts, however, that any rough notes need only be produced under the Jencks Act if they satisfy the Sixth Circuit's "adoption test." Id. at 2. The Government further claims that it "will review the rough notes to ensure that there are no inconsistencies or material omissions between the rough notes and formal reports that have been produced," and if any such inconsistencies, omissions, or Brady information is discovered, the Government "will disclose the rough notes to the defendants in a timely fashion." Id. at 2.

As previously noted, the Jencks Act requires the Government to turn over a statement of a witness after the witness has testified on direct examination. A "statement" includes a writing that

is a "substantially verbatim" recitation of the witness's statement that was made "contemporaneously" to the statement. See Palermo v. United States, 360 U.S. 343, 351 (1959). According to the Sixth Circuit's "adoption test," which is used to determine whether a statement must be produced under the Jencks Act, "a government report or notes of a witness' statement must be produced 'if the notes from the interview were read back to and verified by the witness and if the report summarized the notes without material variation.'" United States v. Farley, 2 F.3d 645, 654 (6th Cir. 1993) (quoting United States v. Williams, 962 F.2d 1218, 1224 (6th Cir. 1992)); see also United States v. Stephens, 492 F.2d 1367, 1377 (6th Cir. 1974) ("The Jencks Act applies to a 'substantially verbatim recital' of an oral statement by a witness and does not apply to an officer's rough notes.").

Assuming a witness has adopted statements in any government agent's notes or reports that would require production under the Jencks Act, a district court is prohibited from ordering disclosure of this material before trial. See United States v. Fletcher, 295 F. App'x 749, 753 (6th Cir. 2008) ("[A]ny [Jencks Act] materials disclosed prior to trial exceeded the government's obligation under the Act."); United States v. Boykins, 915 F.2d 1573 (Table), at *5 (6th Cir. 1990) ("The Sixth Circuit has expressly held that the government has no obligation to disclose and the trial court has no discretion to require disclosure of Jencks Act material before a witness testifies." (citing United States v. Algie, 667 F.2d 569, 571 (6th Cir. 1982)); Presser, 844 F.2d at 1283 ("The clear and consistent rule of this circuit is that the intent of Congress expressed in the [Jencks] Act must be adhered to and, thus, the government may not be compelled to disclose Jencks Act material before trial."); Watson, 787 F. Supp. 2d at 673 ("[T]he Jencks Act prohibits a court from ordering disclosure of Jencks material before the witness has testified in direct examination."). And because the Government has indicated that it will retain and preserve rough notes of federal agents and

state investigators, an order from this Court directing such retention and preservation is unnecessary. See United States v. Graham, No. 15-20652-05, 2016 WL 6158962, at *2 (E.D. Mich. Oct. 24, 2016) (denying as moot the defendant's motion for government agents and law enforcement officers to retain rough notes where the government responded that it will retain such notes and is aware of its disclosure obligations). Therefore, Johnson's motion is denied.

## IV. CONCLUSION

For the reasons stated above, the Court denies Johnson's motions for pretrial disclosure of confidential informants' identities and any agreements between the Government and its witnesses (Dkt. 352), and retention and pretrial disclosure of rough notes of government agents and law enforcement officers (Dkt. 353). The Court grants Johnson's motion for pretrial disclosure of any co-defendants' statements the Government intends to offer into evidence during trial (Dkt. 350) and orders the Government to produce these statements sixty days before trial.

SO ORDERED.

Dated: January 2, 2019
     Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge